DORSEY & WHITNEY LLP
J. Michael Keyes (SBN 262281)
keyes.mike@dorsey.com
Jeremy R. Larson (WSBA No. 22125)
larson.jake@dorsey.com
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone: (206) 903-8800
Facsimile: (206) 903-8820

SLARSKEY LLC
Renee B. Bea (SBN 268807)
rbea@slarskey.com
767 Third Ave, 14th Floor
New York, NY 10017
Tel: (212) 658-0661

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Edward Taylor Sittler, Quatsch Revocable Trust u/a April 20, 2020, as amended, and Quatsch Investments, LLC,<br><br>Plaintiff(s),<br><br>v.<br><br>Crescent Cove Opportunity Lending, LLC, Crescent Cove Opportunity Lending B, LLC, Crescent Cove Capital II, LP,<br><br>Defendant(s). | CASE NO. 3:24-cv-402<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiffs EDWARD TAYLOR SITTLER ("Sittler"), QUATSCH REVOCABLE TRUST u/a April 20, 2020, as amended ("Quatsch Trust"), and QUATSCH INVESTMENTS, LLC ("Quatsch" or "Borrower"), by and through undersigned counsel and for its complaint against Defendants CRESCENT COVE OPPORTUNITY LENDING, LLC, CRESCENT COVE OPPORTUNITY LENDING B, LLC, and CRESCENT COVE CAPITAL II, LP (collectively, "Crescent Cove" or "Lenders") alleges as follows:

## INTRODUCTION

1. This action for declaratory relief arises out of an $8 million loan, which is indisputably not yet due, and the Lenders' efforts to amend the loan's terms by imposing onerous new collateral and repayment obligations on the Borrower prior to maturity.

2. Sittler is one of the founders of Color Health, Inc. ("Color Health"), a private healthcare technology company. In 2022, Sittler transferred certain of his shares in Color Health to Quatsch.

3. The Crescent Cove Defendants are part of Crescent Cove Advisors, a private investment and lending platform that, among other business activities, extends debt to private ventures and their founders.

4. On April 4, 2022 Quatsch and Crescent Cove executed a Promissory Note (the "Note") by which Crescent Cove would lend Quatsch the principal sum of $8,000,000 (the "Loan") to be secured by 192,771 shares of Color Health stock valued at $83 per share (the "Collateral"). The Note is set to mature on April 4, 2024.

5. Leading up to the execution of the Note, Quatsch did not yet have all the necessary written consents required to establish its ability to pledge the Collateral (the "Requisite Consents"). In order to close the Loan, and solely as a temporary means to satisfy Crescent Cove until the Requisite Consents were received, Sittler, on behalf of himself and as trustee of the Quatsch Trust,

1  executed a Personal Guaranty. This Personal Guaranty would be released once Quatsch obtained the
2  Requisite Consents and provided certain documentation (the "Pledged Collateral Conditions") to
3  Lenders, as set forth in Paragraph 14(h) of the Note.

4      6.    Among other terms, the Note provided generous downside risk protection for the
5  Lenders. Right off the bat, $1,600,000 was held back (along with $80,000 to cover certain expenses)
6  from the disbursement of the Loan to cover the 10% per annum interest on the Loan amount. To
7  mitigate downside risk, the Loan was collateralized 2-to-1, meaning the value of the Collateral
8  pledged to secure the Loan was, at that time, worth $16,000,000—twice the principal amount of
9  $8,000,000. In addition, if the value of the stock were to fall below a certain threshold amount and a
10 Fair Market Value Event ("FMV Event"), which is specifically defined in the Note, were to occur
11 prior to maturity, Quatsch would need to post additional collateral to secure the Loan.

12     7.    On top of the built-in downside risk protection, the Lenders stood to gain if the Color
13 Health stock were to increase in value. In addition to the repayment amount, the Note entitles the
14 Lenders to 20% of any increase in value of 96,386 shares of Color Health stock in excess of
15 $8,000,000 on the Loan's maturity date.

16     8.    In the Spring of 2023, amid ongoing discussions regarding the documentation that
17 would formally pledge the Collateral upon Borrower's receipt of the last remaining Requisite
18 Consents, Jun Hong Heng ("Heng"), the Managing Member of the Crescent Cove entities, expressed
19 concern about the share price of Color Health stock and thus the value of the Collateral.

20     9.    Though no FMV Event had occurred, Heng nevertheless demanded that Quatsch and
21 Sittler post additional collateral. Heng leveraged the Personal Guaranty telling Sittler that he was
22 "uncomfortable" releasing the Personal Guaranty unless additional collateral was pledged.

23     10.    Quatsch was initially willing to negotiate terms by which Quatsch might post
24 additional Color Health stock in exchange for the removal of a provision in the Note that subjected

Quatsch to potential additional collateral obligations arising from future transactions (or FMV Events).

11. Between April and September 2023, Sittler and Heng negotiated a proposed amendment to the Note. Although, during those negotiations, Sittler and Heng reached consensus on how counsel should be instructed to document certain proposed terms, and while counsel for both parties exchanged numerous drafts of the proposed amendment, no amendment was ever executed.

12. Then, in September 2023, Borrower obtained the Requisite Consents necessary to release the Personal Guaranty and delivered them to Crescent Cove's counsel.

13. Crescent Cove accordingly had been timely presented with all documentation necessary to finalize the proposed amendment and to finalize the documentation necessary to satisfy the Pledged Collateral Conditions for release of the Personal Guaranty.

14. Instead of finalizing and executing the amendment and the documentation necessary to satisfy the Pledged Collateral Conditions, Heng , effectively rescinded the proposal he had made when he first sought to modify the Note's terms. Heng called Sittler on October 13, 2023 and informed him that he was "still not comfortable" releasing the Personal Guaranty, but would nevertheless expect Quatsch to pledge additional Color Health shares as additional collateral for the Loan.

15. At that point, Sittler re-evaluated the dealings in light of Heng's unreasonable posturing. Sittler notified Crescent Cove through counsel that the negotiation needed a "reset," explaining that the proposed Note amendment was no longer necessary because neither party was aware of an actual FMV Event and the Personal Guaranty would be deemed released after Quatsch's satisfaction of the Pledged Collateral Conditions under the self-executing provision in Paragraph 14(h) of the Note.

16. Heng then began seeking additional concessions from Quatsch and Sittler, unreasonably demanding that *in addition to posting more collateral,* Quatsch and Sittler agree,

essentially, to a partial prepayment of almost half of the Loan *in cash* prior to maturity. Quatsch and Sittler rejected Heng's demands.

17. The Personal Guaranty, and Sittler's and the Quatsch Trust's obligations thereunder, were "deemed released" pursuant to the terms of the Note and the Personal Guaranty upon Quatsch's delivery of the final documentation necessary to satisfy the Pledged Collateral Conditions to Crescent Cove.

18. Apparently realizing that his leverage over Sittler and Quatsch Trust was wavering, Heng then doubled down on seeking additional concessions from Quatsch and Sittler. He fabricated events of default in order to prevent release of the personal guaranty and to force Sittler to prepay almost half of the loan. Heng took the position that the parties' preliminary consensus during negotiations regarding a revised value of the Color Health stock required Quatsch to post additional collateral either because it constituted a FMV Event under the Note or an amendment to the Note. But the Note defines a FMV Event with specificity, and none of the circumstances set forth under the Note's definition have ever occurred. Heng and Crescent Cove have refused to acknowledge this fact and have instead threatened to impose unwarranted costs and sue Plaintiffs if they do not accede to Heng's and Crescent Cove's demands.

19. Moreover, despite the fact that all conditions necessary to deem the Personal Guaranty released have been met, and despite being notified of that fact, Crescent Cove has refused to acknowledge that the Personal Guaranty is released. Instead, Crescent Cove maintains that the Personal Guaranty remains in effect and has threatened legal action to enforce the Personal Guaranty unless Sittler contributes additional cash and collateral to secure the Note.

20. Accordingly, by this action, Quatsch seeks a declaration that the Note was not amended and that statements made by or on behalf of the Plaintiffs in the context of negotiations regarding prospective modifications to the Note do not constitute a "FMV Event" as that term is defined in the Note. Furthermore, Sittler and the Quatsch Trust seek a declaration that the conditions

for the release of the Personal Guaranty have been satisfied and the Personal Guaranty is deemed released.

## THE PARTIES

21. Plaintiff Edward Taylor Sittler is a citizen of the State of Washington and resides in Seattle, Washington.

22. Plaintiff Edward Taylor Sittler, as trustee for the Quatsch Revocable Trust u/a April 20, 2020, as amended, is a citizen of the State of Washington and resides in Seattle, Washington.

23. Plaintiff Quatsch Investments, LLC is a Washington limited liability company with a primary place of business at 701 Fifth Avenue, Suite 6100, Seattle, WA 98104. Its sole member is a citizen of the State of Washington.

24. Upon information and belief, Defendant Crescent Cove Opportunity Lending, LLC is a Delaware limited liability company located at 30 Bush Street, Suite 703 San Francisco, CA 94108 and none of its members are citizens of the State of Washington.

25. Upon information and belief, Defendant Crescent Cove Opportunity Lending B, LLC is a Delaware limited liability company located at 30 Bush Street, Suite 703 San Francisco, CA 94108 and none of its members are citizens of the State of Washington.

26. Upon information and belief, Defendant Crescent Cove Capital II, LP is a Cayman Islands exempted limited partnership located at 30 Bush Street, Suite 703 San Francisco, CA 94108 and none of its members are citizens of the State of Washington.

## VENUE AND JURISDICTION

27. This litigation is a civil action over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) based on diversity of the parties and the amount in controversy, which exceeds $75,000. Quatsch seeks a declaratory judgment that the Note for the $8,000,000 Loan was not amended and that statements made by or on behalf of the Plaintiffs in the context of negotiations regarding prospective modifications to the Note do not constitute a "FMV Event" as

that term is defined in the Note. Furthermore, Sittler and the Quatsch Trust seek a declaratory judgment that the conditions for the release of the Personal Guaranty of the $8,000,000 Loan have been satisfied and the Personal Guaranty is deemed released.

## ALLEGATIONS

**OVERVIEW OF THE NOTE AND THE GUARANTY**

28. In 2013, Sittler co-founded Color Health (formerly known as Color Genomics, Inc.).

29. Sittler transferred his ownership of certain shares in Color Health to Quatsch.

30. In April 2022, Quatsch and the Lenders executed a Note for $8,000,000, to be secured by the Collateral: 192,771 shares of common stock of Color Health. The Note is attached as Exhibit A.

31. The Note was always intended to be non-recourse, secured solely against the Collateral, as defined in the Note.

32. At closing, however, the Requisite Consents, *i.e.,* certain written consents from Color Health necessary to allow Quatsch to pledge the Color Health shares as the Collateral, had not yet been obtained. In order to allow the Loan to close, Sittler and the Quatsch Trust entered into a Personal Guaranty agreement to secure the Loan until the Requisite Consents could be obtained and provided to Lenders. *See* Exhibit A at ¶ 14(h). The Personal Guaranty agreement is attached as Exhibit B.

33. The Personal Guaranty, for so long as it was in effect, obligated Sittler and the Quatsch Trust to repay, in the event that Quatsch did not, "all principal, interest, fees, reimbursement, expenses or otherwise . . .[up to] $8,500,000.00 plus the amount of the Upside Payment plus amounts payable pursuant to Section 1(b) hereof." *See* Exhibit B at Section 1(a).

34. Upon release of the Personal Guaranty pursuant to Paragraph 14(h) of the Note, the Note was secured only by the "Borrower Equity Interests" defined in the Note as "192,771 shares of

common stock of [Color Health] and all substitutions therefor and replacements thereof, together with any securities entitlements related thereto." *See* Exhibit A, at ¶ 14(h).

35. As reflected in the Note, the parties agreed that the Fair Market Value of Color Health common stock was, at the time of closing, $83 per share. *See* Exhibit A, at 2(b) ("The parties acknowledge and agree that the Fair Market Value of each share of Issuer's common stock as of the Closing Date is $83.00 per share.") This agreed upon amount was used to calculate the amount of Collateral, in the form of shares of common stock of Color Health, needed to secure the Loan.

36. At the time of Closing, the 192,771 shares of common stock of Color Health yielded approximately $16,000,000 of Collateral securing the $8,000,000 Note.

37. Pursuant to the Note's terms, any post-closing arm's length transaction that falls within the Note's definition of an "FMV Event" triggers additional obligations under the Note. *See* Exhibit A, at ¶¶ 14(g), 15(j), 2(b) (defining "FMV Event").

38. The Note defines an "FMV Event" as any of an (i) arm's length equity financing transaction, (ii) arm's length right of first refusal transaction, or (iii) arm's length third party sale. *See* Exhibit A, Para 2(b) ("As used in this Note, the term "Fair Market Value" of the Issuer's common stock at any given time shall be based on the valuation of the Issuer used in the Issuer's most recent (i) arm's length equity financing transaction, (ii) arm's length right of first refusal transaction, or (iii) arm's length third party sale (each such transaction, an "FMV Event"), whichever occurred most recently; provided, that if any of the common stock of Issuer is being sold by Borrower in connection with an arms-length third party sale on market terms, the "Fair Market Value" of the Shares shall be equal to all consideration payable to Borrower in connection with such sale on account of such Shares.").

39. Should any FMV Event occur, Quatsch would be obligated under the Note to "provide written notice to Agent," on a quarterly basis, "of the Fair Market Value of the Issuer's common stock implied by the most recent FMV Event." Exhibit A, at ¶ 14(g).

40. Should a FMV Event occur that indicates the value of Color Health's shares has fallen below $83, the Note obligates Quatsch to notify Agent of the FMV Event within three business days, *see* Exhibit A, at ¶ 14(g), and to contribute additional cash or collateral as follows:

> Until all amounts under this Note have been paid in full, the Borrower shall not: . . . Permit the sum of (x) prior to the satisfaction of Borrower's obligations in Section 14(h), (i) the aggregate Fair Market Value of the Specified Interests, plus (ii) the aggregate amount of unrestricted cash and/or Cash Equivalents of the Loan Parties, or (y) following satisfaction of Borrower's obligations in Section 14(h), (i) the aggregate Fair Market Value of the Specified Interests, plus (ii) Cash Collateral held in the Cash Collateral Account, in each of the foregoing cases, as supplemented by any assets acquired and/or pledged in accordance with Section 16(c)(ii), to be less than $16,000,000 at any time.

Exhibit A, at ¶ 15(j).

41. Conversely, the Note provides financial upside to Crescent Cove in the event a FMV Event occurs that indicates the value of Color Health stock on or before maturity has increased above $83 per share. *See* Exhibit A, at ¶ 2(b) ("On the Maturity Date or any earlier date of the full repayment of the principal balance of the Loan, in addition to all other amounts owing to the Lenders under this Note, Borrower shall pay to Agent (to be applied by Agent ratably among the Lenders in accordance with their Percentage Shares) a payment in cash or shares of the Issuer's common stock, in accordance with Section 2(e) (the "Upside Payment"), equal to 20% of any **increase** in the Fair Market Value of 96,386 shares of common stock of Issuer . . . in excess of $8,000,000 on the Maturity Date.") (Emphasis added.).

42. Paragraph 14(h) of the Note identifies the terms that must be met for release of the Personal Guaranty. Under the Note's express terms, the Personal Guaranty is "deemed released" without further action once the "Requisite Consents" have been obtained and the "Pledged Collateral Conditions" have been satisfied as outlined in Paragraph 14(h) of the Note:

> From and after the Closing Date, Borrower shall use commercially reasonable efforts to obtain or cause to be obtained any consent or approval required under the terms of any law, regulation or agreement (collectively, the "Requisite Consents") to permit (i) Borrower to pledge

to Agent the Specified Interests and Cash Collateral, and (ii) Guarantors, as applicable, to pledge to Agent 100% of the Equity Interests of Borrower (the "Borrower Equity Interests"). No later than five (5) Business Days after obtaining the Requisite Consents (or such later date as Agent may agree in its sole discretion), Borrower shall (x) provide or cause the applicable Guarantor to provide to Agent a pledge or security agreement and appropriate certificates and powers or financing statements, pledging all of the Specified Interests and Borrower Equity Interests, in form and substance reasonably satisfactory to Agent, to Agent (including being sufficient to grant Agent a first priority Lien in the Specified Interests and Borrower Equity Interests), (y) execute, deliver and file or record all further instruments and documents (including, without limitation, any control agreements), and will take all further actions that Agent may reasonably request in order to perfect and protect any pledge or security interest granted to Agent or to enable Agent to exercise and enforce its rights and remedies under any Loan Document, and (z) provide to Agent all other documentation which, in its reasonable opinion, is appropriate with respect to the execution and delivery of the applicable documentation referred to above (collectively, the "Pledged Collateral Conditions"). At such time as Borrower has obtained the Requisite Consents and satisfied the Pledged Collateral Conditions, the obligations of the Guarantors under the Guaranty and any other Guarantor Document will be deemed released and terminated and of no further force or effect.

Exhibit A, at ¶ 14(h).

43. Immediately after Closing on April 4, 2022, Quatsch took steps to obtain the Requisite Consents from Color Health and, among other things, permit Quatsch to provide Crescent Cove with a first priority Lien in Color Health shares as required by Paragraph 14(h) of the Note.

44. Counsel for the parties also negotiated the terms of the documentation necessary to pledge the Collateral as security for the Loan upon obtaining the Requisite Consents.

**HENG REQUESTS THAT QUATSCH POST ADDITIONAL COLLATERAL**

45. As a privately held stock, Color Health is not traded on a public exchange.

46. In or around April 2023, Crescent Cove apparently formed the belief that Color Health stock would be valued at less than $83 per share were a new arm's length transaction to take place.

47. In or around April 2023, while the parties were still waiting for the Requisite Consents to be provided to Quatsch, Heng, Crescent Cove's Managing Member, reached out to Sittler to request that Quatsch and Crescent Cove amend the Note to restate the value of the Color Health stock. This proposed change would, in turn, increase the amount of Color Health stock required as security for the Loan.

48. Pursuant to the Note, the Loan documents "may be amended only by an instrument in writing intended for that purpose executed jointly" by the parties. *See* Exhibit A, at ¶ 18. Therefore, Quatsch and Crescent Cove proceeded to negotiate the terms of such writing.

49. Among the terms that Quatsch and Crescent Cove agreed to modify was, as Crescent Cove had demanded, the stated Fair Market Value of Color Health's stock in Paragraph 2(b) of the Note. According to Heng, his belief that the value of the Color Health stock had dropped was based on an inquiry from a third party regarding the potential sale of Color Health stock. Such an inquiry is not, itself, a FMV Event, and did not trigger any additional Collateral-related obligations under the Note. Yet Crescent Cove exerted the (wholly unrelated) Personal Guaranty as leverage to obtain the desired modification—specifically, Crescent Cove dangled the possibility of releasing the Personal Guaranty *only* if Quatsch would agree to modify the agreed-upon Fair Market Value of Color Health's stock in Paragraph 2(b) of the Note.

50. Following oral negotiations, Heng and Sittler reached consensus that the price per share for purposes of the proposed amendment would be set at $50 per share. On May 9, 2023, to memorialize the consensus reached through that negotiation and to communicate it to the parties' respective counsel tasked with preparing the proposed amendment, Sittler wrote to Heng:

> Per our conversation, we have jointly determined the current fair market value of Color stock to be $50/share for the purposes of the loan issued to me by Crescent Cove on 04/04/2022. It is difficult to know the true price of Color common stock in this environment since there is extremely limited liquidity and there are no regular transactions involving the equity. Given what we currently know about market conditions and limited conversations with potential buyers and sellers of the stock, we

believe that $50/share represents a reasonable estimate. We will adjust the amount of collateral posted to support the loan to 320,000 shares to reflect this new fair market value.

51. This proposed $50 share price was the result of negotiations between the parties. It was not itself an FMV Event, nor was it based on any actual FMV Event that had occurred.

52. On May 11, 2023, Quatsch and Crescent Cove exchanged messages via counsel, wherein Quatsch requested "two changes to the Note" in exchange for the share price modification. Specifically, Quatsch sought modifications to terms and definitions that might trigger further collateral requirements, including a modification to the definition of "FMV Event" to protect Quatsch from the potential of an arbitrary "third party" transaction setting a share price that might not actually reflect the true Fair Market Value of Color Health's common shares.

53. Following these negotiations, the parties exchanged drafts of proposed amendments, but no final writing amending the Note was ever executed.

**QUATSCH PROVIDES THE REQUISITE CONSENTS NEEDED TO RELEASE THE GUARANTY**

54. Negotiations broke down in September 2023 after Quatsch's counsel notified Crescent Cove that the Requisite Consents necessary to release the Personal Guaranty had been obtained.

55. On September 18, 2023, Color Health provided the final signatures needed to provide the Requisite Consents to Quatsch.

56. The same day, on September 18, Quatsch provided Crescent Cove's legal counsel, David V. Chang, copies of the Requisite Consents and a draft of the Pledged Collateral Conditions Agreement the parties had been discussing for months for Crescent Cove's review and comment.

57. On September 26, 2023, Crescent Cove's counsel provided comments on the form and substance of the Pledged Collateral Conditions Agreement.

58. The next day, on September 27, 2023, Quatsch's counsel responded, incorporating Crescent Cove's edits into the draft Pledged Collateral Conditions Agreement.

59. Thereafter, Crescent Cove provided an additional comment on the Pledged Collateral Conditions Agreement, asking to see transfer documents showing the chain of ownership from Sittler all the way through to the Quatsch, which Quatsch promptly provided. Despite being invited to provide further comment, Crescent Cove raised no further objections to the form or substance of the Pledged Collateral Conditions Agreement. Heng and Crescent Cove would neither finalize the amendment, nor acknowledge that the conditions necessary to release the Personal Guaranty had been met.

60. Instead, Heng began fabricating events of default, and began making other demands, effectively rescinding the proposal he had made when he first sought to modify the Note's terms.

61. On October 13, 2023, Heng called Sittler to notify him that Crescent Cove would not acknowledge that the requisite conditions for the Personal Guaranty to be deemed released had occurred, and demanded that Quatsch post the additional collateral contemplated in the proposed amendment anyway.

62. On October 18, 2023, Quatsch notified Crescent Cove through counsel that the parties needed to "reset" on the negotiations surrounding the proposed amendments to the Note, which had not been reduced to a final, signed writing, explaining that from Quatsch's point of view, the proposed amendment was no longer necessary. Quatsch explained that, "[a]lthough as part of the discussions described above, we have exchanged drafts of a waiver for an FMV Event, it appears on further inquiry that is not necessary – there does not appear to have been a FMV Event, and so there has not been any change in the asset requirements under Section 15(j)."

63. In response, on October 19, 2023, Crescent Cove demanded, without basis, that on top of pledging additional Color Health stock as security for the Loan, Sittler make a cash payment to reduce the principal of the Loan. Neither Quatsch nor Sittler had ever agreed to prepayment of the Loan (during the parties' negotiations from April-September 2023 or otherwise), and yet Crescent Cove took the unreasonable position that it would impose this (new) cash requirement as a condition

to acknowledging release of the Personal Guaranty, even though release of the Personal Guaranty was not dependent upon Crescent Cove's assent to such release.

64. Counsel for Quatsch rejected these bogus demands, but invited Crescent Cove to engage in further discussions. At the same time, Quatsch also informed Crescent Cove that, "[w]e would like to put the pledge in place and trigger the release of the guaranty as soon as possible," and invited Crescent Cove to provide any additional edits to the Pledged Collateral Conditions Agreement.

65. On October 26, 2023, Quatsch delivered the signed Pledged Collateral Conditions Agreement to Crescent Cove, thus satisfying the Pledged Collateral Conditions under Paragraph 14(h) of the Note.

66. Upon delivery of these documents, the Personal Guaranty was "deemed released and terminated and of no further force or effect" under the Note's terms. *See* Exhibit A, at ¶ 14(h).

67. There is no basis under the Note for Crescent Cove's insistence that the Personal Guaranty remains in effect after the Requisite Consents were obtained by Quatsch on September 18, 2023 and the signed Pledged Collateral Conditions Agreement was provided to Crescent Cove on October 26, 2023.

68. Likewise, Crescent Cove has no basis under the Note to insist on prepayment of any portion of the principal amount of the Loan as a precondition to the release of the Personal Guaranty.

69. Nonetheless, Crescent Cove unreasonably maintains that the Personal Guaranty remains in effect and has threatened legal action to enforce the Personal Guaranty.

70. Even though the Note has yet to mature, and no FMV Event or Event of Default has occurred, Crescent Cove has taken the position that the Lenders would only "agree to release the guaranty after the pay down occurs" in the form of a cash payment by Quatsch and Sittler to Crescent Cove of $3,866,667, and after a pledge of an additional 192,771 shares in Color Health

(*i.e.,* double the amount originally required as security). Again, release of the Personal Guaranty was not dependent upon Crescent Cove's agreement to such release.

71. Crescent Cove also takes the unreasonable position that the parties' April-May 2023 discussions about revising the per share value of the Color Health stock and the subsequent, unsuccessful negotiations through September 2023 regarding an amendment to the Note create an enforceable amendment to the Note that stipulates to a "FMV Event" under the terms of the Note.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Declaratory Judgment – Personal Guaranty)

72. Plaintiffs repeat and incorporate by reference the allegations above.

73. Crescent Cove refuses to acknowledge that the Personal Guaranty was released, has unreasonably maintained that the Personal Guaranty is in effect, and has threatened to bring legal action against Sittler and the Quatsch Trust to enforce it.

74. An actual, present, and justiciable controversy has arisen between Sittler and the Quatsch Trust, on the one hand, and Crescent Cove, on the other, concerning Sittler's and the Quatsch Trust's rights to be released from the Personal Guaranty.

75. Sittler and the Quatsch Trust seek a declaratory judgment from this Court that the Personal Guaranty was released on October 26, 2023, upon receipt of the Requisite Consents by Quatsch and delivery of the Pledged Collateral Conditions Agreement to Crescent Cove.

### SECOND CAUSE OF ACTION
(Declaratory Judgment – Promissory Note)

76. Plaintiffs repeat and incorporate by reference the allegations above.

77. Crescent Cove has, variably, claimed that a May 9, 2023 email between Sittler and Heng either is, itself, an amendment to the Note or constitutes a FMV Event.

78. Crescent Cove takes these positions notwithstanding the undisputed facts that:

      i.    the Note has not been amended because there is no writing executed by the parties as required pursuant to the express terms of the Note;

      ii.    neither the May 9, 2023 email itself, nor the negotiations that provide the context for that communication, meet the definition of a FMV Event as defined in Paragraph 2(b) of the Note; and

      iii.    Quatsch is not aware of the occurrence of, and Crescent Cove has not identified, any other FMV Event, as that term is defined in Paragraph 2(b) the Note.

79. Crescent Cove has declared an Event of Default under the Note based on its assertion that the Fair Market Value *should be* $50 per share instead of the $83 per share set forth in Paragraph 2(b) of the Note.

80. An actual, present, and justiciable controversy has arisen between Quatsch and Crescent Cove concerning whether the parties' negotiations relating to a proposed amendment to the Note that would set the Fair Market Value at $50 per share, which negotiations did not result in a signed, written agreement, nevertheless constitute an amendment or a "FMV Event" as that term is defined in the Note.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. For a declaration that the conditions for the release of the Personal Guaranty have been satisfied and the April 4, 2022 Personal Guaranty is released.

2. For a declaration that the Note was not amended and that statements made by or on behalf of the Plaintiffs in the context of negotiations regarding prospective modifications to the Note do not constitute a "FMV Event" as that term is defined in the Note.

3. For such other relief as is just and equitable herein.

Date: January 23, 2024          Submitted By,

                                                        DORSEY & WHITNEY LLP

                                                  By: /s/ *J. Michael Keyes*
                                                  J. Michael Keyes (SBN 262281)
                                                  keyes.mike@dorsey.com
                                                  Jeremy R. Larson (WSBA No. 22125)
                                                  larson.jake@dorsey.com
                                                  701 Fifth Avenue, Suite 6100
                                                  Seattle, WA 98104
                                                  Telephone: (206) 903-8800
                                                  Facsimile: (206) 903-8820

                                                  SLARSKEY LLC
                                                  Renee B. Bea (SBN 268807)
                                                  rbea@slarskey.com
                                                  767 Third Ave, 14th Floor
                                                  New York, NY 10017
                                                  Telephone: (212) 658-0661

                                                  Attorneys for Plaintiffs