QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Adam Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| Edward Taylor Sittler, Quatsch Revocable Trust u/a April 20, 2020, as amended, and Quatsch Investments, LLC, <br><br>           Plaintiffs and Counterclaim-Defendants, <br><br>     vs. <br><br> Crescent Cove Opportunity Lending, LLC, Crescent Cove Opportunity Lending B, LLC, Crescent Cove Capital II, LP, <br><br>           Defendants and Counterclaim-Plaintiffs. | Case No. 3:24-cv-402 <br><br> **DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF** |

Defendants Crescent Cove Opportunity Lending, LLC, Crescent Cove Opportunity Lending B, LLC, Crescent Cove Capital II, LP (collectively, "Crescent Cove" or "Defendants") hereby submit their Answer, Affirmative Defenses, and Counterclaims in response to the Complaint for Declaratory Relief (the "Complaint") filed by Edward Taylor Sittler ("Sittler"), Quatsch Revocable Trust u/a April 20, 2020, as amended, and Quatsch Investments, LLC ("Quatsch," collectively with Sittler, "Plaintiffs"), as set forth below.

Crescent Cove denies all allegations in Plaintiffs' complaint unless expressly admitted in the following paragraphs. Any admissions herein are for purposes of this matter only. Crescent Cove reserves all rights to amend its pleading, including the right to take further positions and raise additional defenses that may become apparent as a result of additional information discovered subsequent to the filing of the Answer and Counterclaims. Each paragraph of the Answer below responds to the corresponding numbered or lettered paragraph of the Complaint.

Put plainly, the declaratory judgment claims are an attempt by Plaintiffs to avoid abiding by the terms of their agreements with Defendants, and were a preemptive attempt to exert leverage over Crescent Cove. Plaintiffs are now in default of the Personal Guaranty and Note, and must satisfy their obligations as set forth in further detail below.

Crescent Cove answers as follows the allegations in the Complaint:

1. Crescent Cove admits that this action is for declaratory relief arising out of a loan, but denies the remaining allegations in Paragraph 1.

2. Crescent Cove admits the allegations in Paragraph 2.

3. Crescent Cove admits the allegations in Paragraph 3.

4. Crescent Cove admits that Quatsch and Crescent Cove executed a Promissory Note by which Crescent Cove would lend Quatsch the principal sum of $8,000,000, to be secured by 192,771 shares of Color Health stock then valued at $83/share. Crescent Cove further admits that the original maturity date of the Note was April 4, 2024, but denies that April 4, 2024 remains the maturity date because the Note has since been accelerated. Crescent Cove denies the remaining allegations in Paragraph 4.

5. Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 5 concerning the intentions of Sittler. Crescent Cove avers that the Personal Guaranty and Note referred to in Paragraph 5 speak for themselves; refer to the Personal Guaranty and Note for an accurate and complete statement of their contents; and otherwise denies the allegations of Paragraph 5.

6. Crescent Cove avers that the Note referred to in Paragraph 6 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 6.

7. Crescent Cove avers that the Note referred to in Paragraph 7 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 7.

8. Crescent Cove admits that in the Spring of 2023, Jun Hong Heng ("Heng") expressed to Sittler concern about the share price of Color Health stock and thus the value of the Collateral. Crescent Cove otherwise denies the allegations of Paragraph 8.

9. Crescent Cove denies the allegations of Paragraph 9.

10. Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 10.

11. Crescent Cove admits that in September 2023, Sittler and Heng negotiated a proposed amendment to the Note. Crescent Cove otherwise denies the allegations of Paragraph 11.

12. Crescent Cove avers that the allegations of Paragraph 12 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 12.

13. Crescent Cove avers that the allegations of Paragraph 13 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 13.

14. Crescent Cove admits that Heng called Sittler on October 13, 2023. Crescent Cove otherwise denies the allegations of Paragraph 14.

15. Crescent Cove avers that the communication referred to in Paragraph 15 speaks for itself; refers to the email referred to in Paragraph 15 for an accurate and complete statement of its content; and otherwise denies the remaining allegations of Paragraph 15.

16. Crescent Cove denies the allegations of Paragraph 16.

17. Crescent Cove denies the allegations of Paragraph 17.

18. Crescent Cove avers that the Note referred to in Paragraph 18 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 18.

19. Crescent Cove denies the allegations of Paragraph 19.

20. Crescent Cove denies the allegations of Paragraph 20. Specifically, Crescent Cove denies that Quatsch is entitled to any relief whatsoever. Crescent Cove specifically denies that Sittler and the Quatsch Trust are entitled to a declaration that the conditions for the release of the Personal Guaranty have been satisfied and the Personal Guaranty is deemed released.

### THE PARTIES

21. Crescent Cove is informed and believes that Taylor Sittler is a citizen of the State of Washington and resides in Seattle, Washington.

22. Crescent Cove is informed and believes that Taylor Sittler, as trustee for the Quatsch Revocable Trust u/a April 20, 2020, as amended, is a citizen of the State of Washington and resides in Seattle, Washington.

23. Crescent Cove is informed and believes that Quatsch Investments, LLC is a Washington limited liability company with a primary place of business at 701 Fifth Avenue, Suite 6100, Seattle, WA 98104. Crescent Cove is informed and believes that its sole member is a citizen of the State of Washington.

24. Crescent Cove avers that Defendant Crescent Cove Opportunity Lending, LLC is a Delaware limited liability company located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111. Crescent Cove admits the remaining allegations of Paragraph 24.

25. Crescent Cove avers that Defendant Crescent Cove Opportunity Lending B, LLC is a Delaware limited liability company located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111. Crescent Cove admits the remaining allegations of Paragraph 25.

26. Crescent Cove avers that Defendant Crescent Cove II, LP is a Cayman Islands exempted limited partnership company located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111. Crescent Cove admits the remaining allegations of Paragraph 26.

## VENUE AND JURISDICTION

27. Crescent Cove admits that this Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) over these Claims. Crescent Cove further admits that it has submitted to personal jurisdiction in this Court and has consented to venue. Crescent Cove admits that Plaintiffs seek the relief stated in Paragraph 27.

## ALLEGATIONS

**Overview of the Note and the Guaranty**

28.    Crescent Cove admits that, on information and belief, Sittler co-founded Color Health (formerly known as Color Genomics, Inc.) in 2013.

29.    Crescent Cove admits that Quatsch received certain shares of Color Health from Sittler in a transfer.

30.    Crescent Cove avers that the Note referred to in Paragraph 30 speaks for itself; and refers to the Note for an accurate and complete statement of its content.

31.    Crescent Cove denies the allegations of Paragraph 31.

32.     Crescent Cove admits that, at closing on April 4, 2022, the Requisite Consents had not yet been received by Crescent Cove. Crescent Cove further admits that Sittler and the Quatsch Trust entered into a Personal Guaranty agreement to secure the Loan, and that a copy of the Personal Guaranty was attached as Exhibit B to the Complaint.  Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 32 concerning the intentions of Sittler. Crescent Cove otherwise denies the allegations of Paragraph 32.

33.     Crescent Cove avers that the Personal Guaranty referred to in Paragraph 33 speaks for itself; refers to the Personal Guaranty for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 33.

34.     Crescent Cove avers that the Personal Guaranty referred to in Paragraph 34 speaks for itself; refers to the Personal Guaranty for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 34. To the extent Paragraph 34 implicates the Note, Crescent Cove further avers that the Note speaks for itself; and refers to the Note for an accurate and complete statement of its content.

35.     Crescent Cove admits that the parties agreed on April 4, 2022 that the Fair Market Value of Color Health common stock was $83 per share at the time of closing. Crescent Cove further admits that this amount was used to calculate the amount of Collateral, in the form of shares of common stock of Color Health, needed to secure the Loan.

36.     Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 36 concerning the value of the Collateral. Crescent Cove admits that 192,771 shares of common stock of Color Health was intended to secure the $8,000,000 Note at the time of closing on April 4, 2022.

37.     Crescent Cove avers that the Note referred to in Paragraph 37 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 37.

38.     Crescent Cove avers that the Note referred to in Paragraph 38 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 38.

39.     Crescent Cove avers that the Note referred to in Paragraph 39 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 39.

40.     Crescent Cove avers that the Note referred to in Paragraph 40 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 40.

41.     Crescent Cove avers that the Note referred to in Paragraph 41 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 41.

42.     Crescent Cove avers that the Note referred to in Paragraph 42 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 42.

43.     Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 43, and on that basis, denies those allegations.

44.     Crescent Cove admits that the parties engaged in preliminary negotiations for certain terms of the documentation necessary to pledge the Collateral as security for the Loan, but otherwise denies the allegations of Paragraph 44.

**HENG REQUESTS THAT QUATSCH POST ADDITIONAL COLLATERAL**

45.     Crescent Cove admits that Color Health is a privately held stock not traded on a public exchange.

46.     Crescent Cove admits that around April 2023, market data indicated that Color Health stock was valued at less than $83 per share.

47.     Crescent Cove admits that Heng emailed Sittler to request an amendment to the Note to restate the value of the Color Health stock and increase the amount of Color

Health stock required as security for the Loan. Crescent Cove further admits that at this time, it had not yet received the Requisite Consents from Quatsch. Crescent Cove denies the remaining allegations of Paragraph 47.

48.    Crescent Cove avers that the Note referred to in Paragraph 48 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 48.

49.    Crescent Cove admits that Crescent Cove and Quatsch agreed to modify the term regarding the stated Fair Market Value of Color Health's stock in Paragraph 2(b) of the Note. Crescent Cove further admits that its belief that the value of Color Health stock had dropped was based on market information. Crescent Cove avers that the allegations of the third sentence of Paragraph 49 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of the third sentence of Paragraph 49. Crescent Cove denies the remaining allegations of Paragraph 49.

50.    Crescent Cove admits that Heng and Sittler reached consensus that the price per share for purposes of the proposed amendment would be set at $50 per share. Crescent Cove further admits that on May 9, 2023, Heng received an email from Sittler. Crescent Cove admits that the excerpt contained in Paragraph 50 is an accurate and true copy of a portion of the May 9, 2023 email Heng received from Sittler. Crescent Cove otherwise denies the allegations in Paragraph 50.

51.    Crescent Cove admits that the $50 share price was the result of negotiations between the parties, but denies that it was just "proposed" any longer following the parties' agreement and written emails. Crescent Cove avers that the allegations of the second sentence of Paragraph 51 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of the second sentence of Paragraph 51.

52.    Crescent Cove admits that Quatsch and Crescent Cove exchanged messages via counsel on May 11, 2023. Crescent Cove avers that the messages referred to in Paragraph 52

speak for themselves; refers to the messages for an accurate and complete statement of their contents; and otherwise denies the allegations of Paragraph 52.

53.     Crescent Cove denies the allegations of Paragraph 53.

54.     Crescent Cove denies the allegations of Paragraph 54.

55.     Crescent Cove denies the allegations in Paragraph 55.

56.     Crescent Cove avers that the September 18, 2023 communication referred to in Paragraph 56 speaks for itself, refers to the communication for an accurate and complete statement of its contents; and otherwise denies the allegations of Paragraph 56.

57.     Crecent Cove admits that on September 26, 2023, Crescent Cove's counsel provided comments on the Pledged Collateral Conditions Agreement. Crescent Cove otherwise denies the allegations in Paragraph 57.

58.     Crescent Cove avers that it lacks sufficient knowledge to admit or deny the allegations of Paragraph 58, and on that basis, denies those allegations.

59.     Crescent Cove avers that the communications referred to in Paragraph 59 speak for themselves; refers to the communications for an accurate and complete statement of their contents; and otherwise denies the allegations of Paragraph 59.

60.     Crecent Cove denies the allegations in Paragraph 60.

61.     Crecent Cove admits that Heng called Sittler on October 13, 2023 to notify him that Crecent Cove did not believe that the requisite conditions for the Personal Guaranty to be deemed released had occurred. Crecent Cove further admits that, pursuant to the terms of the amended Note, it demanded Quatsch post the additional collateral agreed upon. Crecent Cove denies the remaining allegations in Paragraph 61.

62.     Crescent Cove admits that it received an email from Quatsch on October 18, 2023; Crescent Cove avers that the email referred to in Paragraph 62 speaks for itself; refers to the email for an accurate and complete statement of its contents; and otherwise denies the allegations of Paragraph 62.

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

63.    Crescent Cove admits that on October 19, 2023, it sent an email to Sittler. Crescent Cove avers that the email referred to in Paragraph 63 speaks for itself; refers to the email for an accurate and complete statement of its contents; and otherwise denies the allegations of Paragraph 63.

64.    Crescent Cove admits that it received an email from Quatsch on October 30, 2023. Crescent Cove avers that the email referred to in Paragraph 64 speaks for itself; refers to the email for an accurate and complete statement of its contents; and otherwise denies the allegations of Paragraph 64.

65.    Crecent Cove admits that it received a document Quatsch purported to be a signed Pledged Collateral Conditions Agreement from Quatsch on October 26, 2023. Crescent Cove denies the remaining allegations of Paragraph 65, including any implication that the document Crescent Cove received was a valid agreement.

66.    Crescent Cove avers that the Note referred to in Paragraph 66 speaks for itself; refers to the Note for an accurate and complete statement of its content; and otherwise denies the allegations of Paragraph 66.

67.    Crescent Cove denies the allegations of Paragraph 67.

68.    Crescent Cove denies the allegations of Paragraph 68.

69.    Crescent Cove admits that the Personal Guaranty remains in effect and has taken legal action to enforce the Personal Guaranty. Crescent Cove otherwise denies the allegations in Paragraph 69.

70.    Crescent Cove denies the allegations of Paragraph 70.

71.    Crescent Cove denies the allegations of Paragraph 71.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Declaratory Judgment – Personal Guaranty)

72.    Crescent Cove incorporates by reference its answers to Paragraphs 1 through 71 as if fully restated herein.

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

73.    Crescent Cove denies the allegations of Paragraph 73.

74.    Crescent Cove avers that the allegations of Paragraph 74 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 74.

75.    Crescent Cove avers that the allegations of Paragraph 75 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 75.

**SECOND CAUSE OF ACTION**

(Declaratory Judgment – Promissory Note)

76.    Crescent Cove incorporates by reference its answers to Paragraphs 1 through 71 as if fully restated herein.

77.    Crescent Cove admits that the email chain between Sittler and Heng, including the May 9, 2023 email referenced in Paragraph 77, amended the Note. Crescent Cove avers that the remaining allegations of Paragraph 77 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 77.

78.    Crescent Cove avers that the allegations set forth in (i), (ii), and (iii) of Paragraph 78 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the remaining allegations set forth in (i), (ii), and (iii) of Paragraph 78.

79.    Crescent Cove admits that it has declared an Event of Default under the Note based on the assertion that the Note was amended to reflect the Fair Market Value of $50 per share. Crescent Cove otherwise denies the allegations in Paragraph 79.

80.    Crescent Cove avers that the allegations of Paragraph 80 contain legal conclusions as to which no response is necessary; to the extent a response is necessary, Crescent Cove denies the allegations of Paragraph 80.

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

**PRAYER FOR RELIEF**

Crescent Cove denies that Plaintiffs are entitled to any of the relief sought in the Complaint.

## AFFIRMATIVE DEFENSES

Defendants Crescent Cove Opportunity Lending, LLC, Crescent Cove Opportunity Lending B, LLC, Crescent Cove Capital II, LP (collectively, "Crescent Cove" or "Defendants") hereby sets forth defenses to those claims filed by Edward Taylor Sittler, Quatsch Revocable Trust u/a April 20, 2020, as amended, and Quatsch Investments, LLC (collectively, "Plaintiffs") in their Complaint for Declaratory Relief (the "Complaint"). Crescent Cove sets forth the following matters to apprise Plaintiffs of certain applicable defenses.  By listing any matter as a defense herein, Crescent Cove does not assume the burden of proving any matter upon which Plaintiffs bear the burden of proof under applicable law.

First Affirmative Defense

(Failure to Mitigate Damages)

Plaintiffs failed to mitigate their alleged damages.  Plaintiffs, through their failure to act in a reasonable and prudent manner, failed to mitigate their alleged damages and are therefore precluded from recovering in whole or in part.

Second Affirmative Defense

(Unclean Hands)

Plaintiffs are barred from proceeding with all, or part, of their claims under the doctrine of unclean hands because of their own acts, omissions, or wrongdoing.

Third Affirmative Defense

(Unjust Enrichment)

Plaintiffs' claims must be barred, in whole or in part, to avoid unjust enrichment of Plaintiffs.

Fourth Affirmative Defense

(Accord and Satisfaction)

Plaintiffs' recovery is barred, in whole or in part, by the doctrine of accord and satisfaction.

Fifth Affirmative Defense

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

(Limitation of Liability by Contract)

An agreement of the parties, including Section 25 of the Note, applies to Plaintiffs' claims and limits recovery, in whole or in part, for any alleged injury Plaintiffs suffered.

### NATURE OF THE COUNTERCLAIMS

1.  Defendants Crescent Cove Opportunity Lending, LLC, Crescent Cove Opportunity Lending B, LLC, Crescent Cove Capital II, LP (collectively, "Crescent Cove" or "Defendants") bring the following counterclaims against Edward Taylor Sittler, Quatsch Revocable Trust u/a April 20, 2020, as amended, and Quatsch Investments, LLC (collectively, "Plaintiffs"). In support of its counterclaims, Crescent Cove alleges the following:

### INTRODUCTION

2.  On April 4, 2022, Quatsch and Crescent Cove executed a Promissory Note (the "Note") by which Crescent Cove agreed to lend Quatsch the principal sum of $8,000,000 (the "Loan") to be secured by 192,771 shares of Color Health stock originally valued at $83 per share (the "Collateral").  Sittler, on behalf of himself and as trustee of the Quatsch Trust, executed a Personal Guaranty to guaranty repayment of the Loan.

3.  In April 2023, Crescent Cove learned that the value of Color Health, Inc. stock had dropped significantly and that the share price listed in the Note executed on April 4, 2022 no longer reflected current market conditions. Sittler was amenable to modifying the share price to a new FMV (as defined by the Note) and the parties began negotiations to modify the Note shortly thereafter.

4.  At that time, the market evidence available showed that the indicative market value of Color Health, Inc. stock had decreased to $21/share. Heng and Sittler discussed the change in market conditions, including this much lower share price. On the basis of these conversations, they agreed on a new stock price for the Collateral that provided benefits to both parties. For Crescent Cove, it obtained a lower stock price that was closer to reality, even though that price was not as low as the objective market price. For Sittler, the agreed price acted as a floor from further

downward revisions based on an FMV Event or other reasons to decrease the price of the Collateral and increase the amount of shares Quatsch had to pledge before the Guaranty could be discharged. Thus, the agreed stock price change gave Sittler downside protection and comfort that this would be the only modification to the share price before the Note matured.

5.      With this approach in mind, Sittler and Crescent Cove negotiated an amendment to the Note that changed the price per share of Color Health stock to $50 per share under Section 2(b) of the Note. On May 9, 2023, Sittler emailed Heng, *inter alia*, "[W]e have jointly determined the current fair market value of Color stock to be $50/share for the purposes of the loan issued to me by Crescent Cove on 04/04/2022….We will adjust the amount of collateral posted to support the loan to 320,000 shares to reflect this new fair market value." On June 22, 2023, Heng wrote, *inter alia*, "Taylor, hope you are well. I wanted to follow up on our conversation last week to if the share transfers have been completed. Thanks, Jun," confirming the existing agreement. This email exchange constituted a writing signed by both parties and therefore, pursuant to the parties' express oral and written agreement, the Note was amended to reflect the $50 share price of Color Health stock. The parties 'respective counsel confirmed this agreement multiple times in writing, including in email communications exchanged on May 5, 2023, June 30, 2023 and September 27, 2023. The change in the Fair Market Value obligated Quatsch to pledge a sufficient amount of Color Health, Inc. common stock at the agreed share price (*i.e.*, 320,000 shares) and/or cash and/or Cash Equivalents to match the aggregate Fair Market Value of the Specified Interests at the agreed upon $50/share price. Quatsch also remained obligated to effectuate all requirements set forth in the Note for such pledges to be effective. Nevertheless, Quastch never satisfied its pledge requirements even for the initial amount of pledge shares at the $83/share price, and further never transferred the additional shares required to satisfy its requirements at the amended $50/share price.

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

6.      In their Complaint, Plaintiffs allege that no amendment to the Note took place and that the Defendants are using the "wholly unrelated" Personal Guaranty as leverage for additional concessions. This is despite the fact that the Personal Guaranty is meant to secure the Loan and that the parties entered into a valid amendment to the Note that increased the amount of shares needed to secure the Loan. Defendants now seek to renege on their contractual obligations without cause or basis in fact, and therefore owe Crescent Cove the amounts set forth in further detail below.

7.      Crescent Cove brings these counterclaims to enforce its contractual rights, including by compelling either the transfer of 320,000 total shares of Color Health stock pursuant to the Note's terms or its equivalent in cash, along with interest at the Default Rate required by the Note. Crescent Cove further seeks additional remuneration of its counsel fees under the Note's terms, and an order compelling Sittler to satisfy these obligations pursuant to the Personal Guaranty, if Quatsch is unable to satisfy them itself.

## PARTIES

8.      Upon information and belief, the Plaintiff Edward Taylor Sittler is a citizen of the State of Washington and resides in Seattle, Washington.

9.      Upon information and belief, Plaintiff Edward Taylor Sittler, as trustee for the Quatsch Revocable Trust u/a April 20, 2020, as amended, is a citizen of the State of Washington and resides in Seattle, Washington.

10.      Upon information and belief, Plaintiff Quatsch Investments, LLC is a Washington limited liability company with a primary place of business at 701 Fifth Avenue, Suite 6100, Seattle, WA 98104. Its sole member is a citizen of the State of Washington.

11.      Defendant Crescent Cove Opportunity Lending, LLC is a Delaware limited liability company located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111 and none of its members are citizens of the State of Washington.

12.     Defendant Crescent Cove Opportunity Lending B, LLC is a Delaware limited liability company located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111 and none of its members are citizens of the State of Washington.

13.     Defendant Crescent Cove Capital II, LP is a Cayman Islands exempted limited partnership located at 1700 Montgomery Street, Suite 240, San Francisco, CA 94111 and none of its members are citizens of the State of Washington.

**VENUE AND JURISDICTION**

14.     This Court has original diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(2) based on diversity of the parties and the amount in controversy, which exceeds $75,000.

15.     This Court has personal jurisdiction over Plaintiffs by virtue of their filing of the Complaint in this action.

16.     Venue is proper because a substantial part of the events and harms giving rise to these claims occurred in this district.

**NATURE AND CIRCUMSTANCES OF THE DISPUTE**

17.     Quatsch and Crescent Cove executed a Promissory Note (the "Note") on April 4, 2022. Each side was represented by counsel of their choice, and they continued to use that counsel throughout all of the events described herein.

18.     Pursuant to the Note, Crescent Cove lent Quatsch the principal sum of $8,000,000 (the "Loan"), which was to be secured by 192,771 shares of Color Health stock originally valued at $83 per share (the "Collateral").

19.     According to the Note, the laws of New York govern the Loan documents, and any disputes relating to the Note:

> 19.  Governing Law. This Note, the other Loan Documents and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note, the other Loan Documents (except, as to any other Loan Document, as expressly set forth therein) and the transactions

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

contemplated hereby and thereby shall be governed by, and construed in accordance with, the law of the State of New York.

20.     Sittler, on behalf of himself and as trustee of the Quatsch Trust, executed a Personal Guaranty (the "Guaranty") to pledge the Collateral. Under the terms of the Guaranty, the Guaranty shall remain in full force and effect until the Obligations (defined by the Guaranty) have been fully met:

SECTION 5. Continuing Guaranty; Successors; Release.

(a)     The death of any Guarantor shall not terminate this Guaranty. Unless terminated earlier in accordance with Section 5(b) hereof, the obligations of the Guarantors under this Guaranty and any other Guarantor Document shall continue in full force and effect until the Obligations shall have been fully and indefeasibly paid in cash and performed and any commitment by the Lenders to extend credit shall have been terminated or shall have expired (collectively, "paid in full"). This Guaranty shall be binding upon the Guarantors and their respective heirs, executors, administrators, successors and assigns (provided that no Guarantor may assign this Guaranty without the prior written consent of the Agent) and shall inure to the benefit of and be enforceable by the Agent and its successors, transferees and assigns. Without limiting the generality of the foregoing, and without notice to the Guarantors, any Lender may assign or otherwise transfer any of its rights and obligations under the Note and any other document or instrument executed in connection therewith to any other person and such other person shall thereupon become vested with all the rights in respect thereof granted to such Lender herein or otherwise.

21.     The Obligations referenced in the Guaranty are defined as "the punctual payment when due, whether at stated maturity, by acceleration or otherwise, and performance of all obligations of the Borrower and each other Loan Party now or hereafter existing to repay the borrowing under the Note and any document or instrument executed in connection therewith, including all principal, interest, fees, reimbursement, expenses or otherwise and whether accruing before or after the filing of a petition initiating any insolvency, bankruptcy, reorganization or similar proceeding (a "Proceeding") affecting the Borrower or any Guarantor."

22.     The Guaranty also makes it clear under Section 8(d) that New York law controls this agreement:

(d)     This Guaranty and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Guaranty and the

transactions contemplated hereby shall be governed by, and construed in accordance with, the law of the State of New York.

23.    After the parties executed the Note and Guaranty, Crescent Cove learned that Color Health stock would be worth less than the $83 per share specified in the Note in an arm's length equity financing transaction, arm's length right of first refusal transaction, or arm's length third party sale if one were to take place. Upon learning these facts, Jun Hong Heng ("Heng"), Crescent Cove's Managing Member, reached out to Quatsch to discuss the issue, and proposed an amendment to the Note to reflect current market conditions.

24.    Sittler, acting on behalf of himself and Quatsch, was amenable to a modification of the share price for the Collateral and executed a binding agreement to this effect.  To this point, Sittler emailed Heng the following on May 9, 2023:

> Per our conversation, we have jointly determined the current fair market value of Color stock to be $50/share for the purposes of the loan issued to me by Crescent Cove on 04/04/2022. It is difficult to know the true price of Color common stock in this environment since there is extremely limited liquidity and there are no regular transactions involving the equity. Given what we currently know about market conditions and limited conversations with potential buyers and sellers of the stock, we believe that $50/share represents a reasonable estimate. We will adjust the amount of collateral posted to support the loan to 320,000 shares to reflect this new fair market value.

In addition to the conversation and agreement that Sittler himself memorialized, Heng also confirmed this agreement in writing and in multiple subsequent conversations with Sittler and/or his attorneys.

25.    Following the May 9, 2023 email from Sittler, both parties' counsel affirmed the agreement to modify the share price multiple times in writing., including, *inter alia*, in email communications on May 11, 2023, June 30, 2023 and September 27, 2023. To this point, all acknowledged and discussed the "the $50 FMV agreement between Taylor and Jun."

26.    Pursuant to New York law and the Note at Paragraph 18, the Loan documents "may be amended only by an instrument in writing intended for the purposes executed jointly." The May

9, 2023 email exchange between Sittler and Heng is exactly such a signed writing, and it therefore amended the FMV of the share price for the Collateral, requiring Quatsch to pledge 320,000 shares in order to satisfy its Obligations with respect to the Collateral and to discharge the Guaranty.

27.    Although the parties subsequently discussed an additional amendment to the definition of "FMV event" in the Note, the proposed modification was not "in exchange" for the amendment to the share price. The May 9, 2023 email exchange between Sittler and Heng did not make the share price modification contingent on any other amendment, and it was indeed the understanding of the parties at the time of negotiations that these were separate modifications. The "FMV event" modification was never reduced to a final signed writing as the share price amendment was.

28.    On September 18, 2023, Crescent Cove received copies of the Requisite Consents for only a portion of the required Color Health shares (192,771, instead of 320,000) and a draft of the Pledged Collateral Conditions Agreement from Quatsch. However, these documents did not reflect the $50 share price of Color Health stock to which the parties had agreed on May 9, 2023. Crescent Cove pointed out these deficiencies in various communications with Quatsch and its attorneys, and maintained it was necessary for Quatsch to fix these error before the parties could agree to the Pledged Collateral Conditions Agreement.

29.    Nevertheless, Quatsch sent a signed Pledged Collateral Conditions Agreement to Crescent Cove on October 26, 2023. But, that version of the agreement suffered from the same defect with respect to the inaccurate share price of Color Health stock.

30.    Similarly, Quastch and Sittler sent a signed "Control Agreement" to Crescent Cove on September 18, 2023, but that document violated Crescent Cove's right, set forth in the document's plain terms, to review and sign off on the agreement's final contents before executing the document. To this point, the Control Agreement last exchanged between the parties still

contained the "Draft" stamp in the header, listed the wrong month, and omitted the day in the date—problems that made their way into the signed version Quatsch and Sittler sent to Crescent Cove. Furthermore, and in any event, that document lacked requisite signatures.

31.     As a result of these multiple problems, the Pledged Collateral Conditions Agreement was never finalized and the Requisite Consents were never perfected.

32.     Quatsch has not provided the materials needed to release the Guaranty. Under Section 16(c)(ii) of the Note, Quatsch remains in default for failure to transfer the additional, agreed upon shares of Color Health stock to Crescent Cove and deliver the Requisite Consents.

33.     Given these problems, Crescent Cove provided notice of multiple Events of Default on November 1, 2023 and December 27, 2023. In these letters, Crescent Cove reiterated its understanding that the parties had expressly agreed in a signed writing under New York law that the Fair Market Value in the Note would be reduced to $50/share and that Quatsch is obligated under Section 16(c)(ii) of the Note to transfer additional shares of Color Health, Inc. common stock to match the aggregate Fair Market Value of the Specified Interests. Crescent Cove notified Quatsch that it had not paid its multiple outstanding invoices as required under the operative documents and was now in default of the Note, that Crescent Cove had the option under Section 3 of the Note to impose the Default Rate, and that that the Personal Guaranty remained in full force and effect.

34.     Crescent Cove is entitled under Section 2(d)(d) of the Note to accelerate payment upon an Event of Default, and it did so on March 1, 2024. In response, on March 13, 2024, Quastch stated it was unwilling to satisfy its obligations under the Note pursuant to that acceleration.

35.     Crescent Cove is entitled under Section 3 of the Note to impose the Default Rate (i.e. "interest at a rate of 15% per annum") from the date of occurrence of the earliest Event of Default.

36.     Crescent Cove sent Quatsch a Notice of Default letter on November 1, 2023. Crescent Cove sent a follow up letter on December 27, 2023. The Events of Default outlined in both letters remain uncured.

37.     Crescent Cove is entitled under Section 25 of the Note to an award of all reasonable costs, expenses, fees, and charges, including all attorneys' fees and costs. incurred in enforcing the Note or with respect to any Default or Event of Default by Quatsch.

## COUNTERCLAIMS

### Count I – Breach of Contract

38.     Crescent Cove repeats and realleges the allegations contained in the above paragraphs as if fully stated herein.

39.     The Note constitutes an offer to extend a loan on the terms stated therein. Quatsch accepted the offer by signing the Note and assenting to its terms.

40.     The Note is a valid and binding contract, and Crescent Cove has fully and/or substantially complied with its obligations under that contract.

41.     Quatsch has materially breached Sections 16(c)(ii) and 2(d)(d) of the Note by refusing to transfer a sufficient amount of Color Health, Inc. common stock (i.e. 320,000 shares) and/or cash and/or Cash Equivalents to match the aggregate Fair Market Value of the Specified Interests at the agreed upon $50/share price. Quatsch has been and continues to be in material breach of the Promissory Note.

42.     Events of Default exist and therefore, Crescent Cove is entitled now to repayment in full of the Note.

43.     Crescent Cove is entitled to an award of attorneys' fees and costs pursuant to Section 25 of the Note.

### Count II – Declaratory Judgment (Personal Guaranty)

44.    Crescent Cove repeats and realleges the allegations contained in the above paragraphs as if fully stated herein.

45.    There exists a controversy involving Sittler and the Quatsch Trust's right to be released from the Personal Guaranty based on Sittler and the Quatsch Trust's allegation that "Crescent Cove refuses to acknowledge that the Personal Guaranty was released, has unreasonably maintained that the Personal Guaranty is in effect, and has threatened to bring legal action against Sittler and the Quatsch Trust to enforce it" (Compl.¶ 73), and that "[a]n actual, present, and justiciable controversy has arisen…concerning Sittler's and the Quatsch Trust's rights to be released from the Personal Guaranty" (Compl. ¶ 74). Crescent Cove has an interest in contesting the claims. The interests are real and adverse, and the issue involved in the controversy is ripe for judicial determination.

46.    Crescent Cove is entitled to a declaratory judgment that the Personal Guaranty was not released on October 26, 2023 and remains in full force and effect.

**Count III – Declaratory Judgment (Promissory Note)**

47.    Crescent Cove repeats and realleges the allegations contained in the above paragraphs as if fully stated herein.

48.    There exists a controversy involving whether the May 9, 2023 email between Sittler and Heng constitutes an amendment to the Note or an FMV Event such that an Event of Default has occurred based on Quatsch's allegation that "Crescent Cove has declared an Event of Default under the Note based on its assertion that the Fair Market Value should be $50 per share instead of the $83 per share set forth in Paragraph 2(b) of the Note" (Compl.¶ 79), and that "[a]n actual, present, and justiciable controversy has arisen…concerning whether the parties' negotiations relating to a proposed amendment to the Note…constitute an amendment or a 'FMV Event'" (Compl. ¶ 80).

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

Crescent Cove has an interest in contesting the claims. The interests are real and adverse, and the issue involved in the controversy is ripe for judicial determination.

49.     Crescent Cove is entitled to a declaratory judgement that (1) the Promissory Note was successfully amended on May 9, 2023 to reflect the Fair Market Value of $50 per share; (2) an FMV event has occurred as that term is defined in the Promissory Note (as amended by the foregoing amendment); and (3) an Event of Default has occurred under Section 16 of the Promissory Note such that Crescent Cove is entitled to accelerate payment, impose the Default Rate, and make a demand on the Personal Guaranty for repayment in full of the Loan plus expenses.

### Count IV – Unjust Enrichment (In the Alternative to Count I)

50.     Crescent Cove repeats and realleges the allegations contained in the above paragraphs as if fully stated herein.

51.     Crescent Cove conferred a measurable benefit to Quatsch in the form of a $8 million loan; and Quatsch was aware of and consciously accepted the benefit.

52.     Quatsch's retention of the benefit without providing payment would be unjust enrichment because Crescent Cove's services were conferred in exchange for expected payment(s) by Quatsch and sufficient Collateral provided by Sittler and the Quatsch Trust.

53.     As of the date Crescent Cove learned of Quatsch's material breach of the Promissory Note to pay for services rendered, Crescent Cove was entitled to accelerate payment, impose the Default Rate and make a demand on the Personal Guaranty for repayment in full of the Loan plus expenses.

### **PRAYER FOR RELIEF**

54.     WHEREFORE, Crescent Cove respectfully requests that this Court enter judgement against Plaintiffs, and grant the following relief:

  a.     Dismissing Plaintiffs' Complaint in its entirety;

b.    Declaring that the Personal Guaranty remains in full force and effect;

c.    Declaring that the Promissory Note was amended on May 9, 2023 to reflect the Fair Market Value of $50 per share, and that an Event of Default has occurred under the Promissory Note;

d.    Such further and other equitable relief as the Court may deem just and necessary under the circumstances.

DATED: March 27, 2024                    QUINN EMANUEL URQUHART &
                                         SULLIVAN, LLP


                                         By _____/s/ Adam Wolfson_____
                                            Adam Wolfson
                                            Attorneys for Defendant

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF

## <u>CERTIFICATE OF SERVICE</u>

I, Adam B. Wolfson, hereby certify that on March 27, 2024, the foregoing document was filed and served electronically, using the CM/ECF system, on all parties registered to receive notices.

Dated: March 27, 2024                                    /s/ Adam Wolfson

ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF